The next case on today's docket is the case of People v. Armstrong, and we have Mr. John Gleeson representing the appellant, and we have Mr. Tim Ting representing the appellate. And when you gentlemen are settled, you may proceed. Thank you, Your Honor. May it please the Court, and counsel. This is the case where the trial prosecutor was allowed to present a witness's writings in lieu of live testimony from the witness. Natasha Armstrong was on trial for aggravated battery and resisting a peace officer. Ultimately, the jury found her not guilty of being a bat, but guilty of resisting. The charges stemmed from an altercation between Armstrong and a deputy Graves. Those two were the only two witnesses to the key events in this case, and naturally, at trial, the credibility of Armstrong and the credibility of Graves were key. Naturally, the estate wanted to discredit Armstrong's testimony by convincing the jury that when Deputy Graves presented her to the jail, her body did not have any sign of injury. Graves testified at trial that he was trying to arrest Armstrong when she attacked and injured him. Armstrong testified she was cooperating with Graves when he attacked and injured her. So the estate wants to discredit Armstrong by convincing the jury that when Graves brought her to the jail, she did not have any injuries on her body. Toward that end, the estate presented jail log entries handwritten by correctional officer Smith, stating that Armstrong did not have any injuries on her body. Now, the estate did not call C.O. Smith to testify at trial. It merely presented the writings of C.O. Smith. Now, this is the kind of tactic that incensed Justice Scalia in that Crawford v. Washington case a few years ago. Justice Scalia wrote that the Confrontation Clause was designed to prevent the estate from prosecuting someone with a writing instead of live testimony. Only the live witness can be cross-examined by the defendant. Only the live witness can be observed and evaluated by the jury. In this case, C.O. Smith was not in the court. Armstrong did not have an opportunity to cross-examine her. The jury did not have the opportunity to observe and evaluate her. The judge admitted the written jail log entries into evidence under the business records exception to the hearsay rule. The judge found that the records were regularly prepared in the course of the jail's business. The thing is that courts have made clear in decisions such as the ones I cited in the brief that the business records exception does not cover every record that was regularly prepared. The character of the record matters. The record must have, as they say, adequate earmarks of reliability and trustworthiness. So the character of the record matters, and the business records exception to the hearsay rule is designed to facilitate the admission of records the likes of which experience has shown to be reliable. Now, if the record was prepared with an eye toward litigation, it is not that kind of record. If the record was prepared with an eye toward litigation, it does not qualify for the business records exception and should be excluded from evidence. Now... Is this the type of thing they contend that would be noted in the police law? In the jail law? In the jail law, the actual condition of the prisoner when they come in. The sheriff testified that it would be. He testified... Well, the sheriff testified that the COs, the correctional officers, are to write down anything unusual about the person who is presented to the jail. That's what the sheriff testified to. And he also testified that he is the person who is in charge of keeping the records at the jail and ultimately instructing the COs on what to write. So, yes. But it's your contention then that writing in here that there was no apparent bruising goes beyond that? Because I guess it's noting a negative in essence. Right. My contention is that when you look at the language of the handwritten entries of CO Smith, and when you remember the context in which they were written, it is quite clear that they were written with an eye toward litigation. The litigation being the prosecution of Armstrong for aggravated battery and resisting a peace officer. Speaking of the... Why is that so clear? Entries. Well... Around the time Armstrong was being processed at the jail, Deputy Graves also was at the jail, had his arm photographed. The state, at trial, used that photo to corroborate Graves' testimony that Armstrong attacked and injured him. So even at the time she was being processed into the jail, even at the time of booking, people were already looking toward that litigation, looking toward the prosecution of Natasha Armstrong for aggravated battery and resisting a peace officer. But isn't this true in about every case? In the jail, they probably take the record down and photographs to protect themselves against further... a civil suit. Oh, well, that may be, yes. They certainly could be anticipating a civil suit. You know, even there, courts say when you're anticipating litigation, you make the record. It does not fall into that business records exception because it was made with an eye toward litigation. But here, you know, you don't even have to think about anticipated civil litigation. You know, this litigation, in a way, already had started or was about to start. The prosecution of Natasha Armstrong for aggravated battery and resisting a peace officer really already started or was about to start. She was brought into the jail. He was being photographed, having his arm photographed for the trial of Natasha Armstrong. People were already looking toward that litigation. And when you remember that context and read the language of the entries, then I think it is clear that these entries were written with litigation in mind and should not have been admitted under the business records exception. In this case, was there an arrest photograph made? Straight forward and then turn right or turn left to take the picture? Was that in record? Well, there must have been. And did that show anything? I don't think anybody mentioned that. That's my memory. Well, we'll have the record. We'll go through it. And anyway, I think that she, I think her allegation was that all the injuries were basically no higher than the neck, mostly like on her back and arms. If I could just read two of the entries, and pardon me for reading to the court, but just two of them. Here, C.O. Smith writes, There are no capital N, capital O underlined. There are no bruises on Natasha Armstrong at this time. And, quote, Again, I stress that inmate Armstrong had no capital N, capital O marks on her body at the time of booking. Now, how could anyone claim that those entries were not written with an eye toward litigation, specifically the prosecution of Natasha Armstrong for aggravated battery and resisting a peace officer? I mean, they plainly were, so they did not qualify for the business records exception. The state should have had C.O. Smith in trial, in the courtroom, to testify. I mean, the state's goal was to discredit Armstrong in a case that turned largely on Armstrong's credibility. I mean, the state had every right to try to discredit her, but it needed to do that in a way that conformed to the rules of evidence and the Confrontation Clause. I ask that the Court reverse the judgment of conviction and remand for a new trial without this very serious error. Thank you. Thank you, Mr. Poisson. Mr. King. Mr. Poisson. May it please the Court. My name is Timothy James King, and I represent the people of the state of Illinois. Your Honors, in my time before you today, I will show you why the defendant's conviction for resisting a peace officer should be affirmed by this Court. Now, to begin, the defendant would have this Court believe that the jail log entries were made by solely Officer Smith. This is not true. The initial jail log was created by both Officer Hedley and Officer Smith. Officer Hedley testified at trial. Officer Hedley testified to everything within the jail log entry. Therefore, the defendant had a right to cross-examine Officer Hedley's testimony. Now, granted, Officer Smith's subsequent jail log entries were written only by him. However, those jail log entries only reiterated the very facts of the beginning, initial jail log entry, which was that there were no physical bruising or abrasions on the defendant and to get an account of personal belongings, which is clearly a ministerial document. The defendant had an opportunity to cross-examine Officer Hedley on pages 140 and 141 of the record, and tellingly, the defendant chose not to do so. Surely, if the defendant is going to claim that his Sixth Amendment rights have been violated here, then this is a case where he should have, at the bare minimum, have cross-examined Officer Hedley. By failing to do so, they cannot then say that Officer Smith's subsequent jail log entries bore any more relevance than Officer Smith's jail log entry in the initial ministerial documents. There was no cross-examination? There was no cross-examination of Officer Hedley. Again, you can find that on page 140 and 141 of the record. Your Honors, I would also note, to begin, that the standard of review here is abuse of discretion. And I state that because this particular court stated in People v. Bean, and I quote, aside from no review at all, the abuse of discretion standard is the most deferential standard of review. The trial court hears judgment that those jail log entries were to be admitted is clearly something that is within its province of discretion. Unless it is fanciful or arbitrary, that judgment should not be overturned. Now, the defendant states that two cases, particularly in this brief, which I want to go over, the Smith case, which is an Illinois Supreme Court case, and Briggs v. Karenga. In both of these cases, there was an anticipation of litigation. As the defendant had stated, there were not adequate earmarks of reliability because in Smith, the officer had no firsthand knowledge of the report of the contents of that particular jail log entry. And furthermore, that jail log entry recorded a fight between two inmates. And they stated that the altercation, the disciplinary actions of a defendant could certainly be seen as something that would be used in anticipation of further litigation. Here, however, there was no disciplinary infraction that was reported. Moreover, this was not by an officer who did not have firsthand knowledge, but rather this was from an officer who had direct knowledge, who actually helped create the initial jail log entry. So simply put, the defendant's reliance on Smith is simply misplaced. He cannot claim that the ruling or holding of Smith should apply when the rationale behind Smith's ruling does not – is not present in this present case. It's the same as with Bracey and Karenga. In Bracey, the defendant had filed a civil suit, as you had previously mentioned. There was a civil suit filed in Bracey, and the defendant in this case has not filed a civil suit. The trial court had the purpose of looking at whether or not those jail log entries were relevant for consideration. They merely reiterated what Officer Headley was stating when she testified. This case is much more like Willer v. Sims. In Willer v. Sims, an inmate filed a civil suit against officers, claiming that they had beaten him so badly that he was now paralyzed. Well, there were reports from medical examiners from the jail and from the prison who had written that they had seen the defendant walking around the courtyard, walking around various parts of the jail. So they used those reports, and Willer, which was decided after Bracey, specifically commented on Bracey's holding, distinguishing it and narrowing it, stating specifically the case actually prepared for some of those reports were not made by the accused officers. Therefore, and I quote, they did not evince the inherent unreliability of the records in Bracey. Your Honors, it is the same here. What we have are reports that were made by Officer Headley and Officer Smith who had no altercations with the defendant. There was no estimation, indication in the record at all. There is no record site that states that Officer Headley or Officer Smith knew about the self-defense motive that the defendant would use at trial that Officer Gray, Deputy Gray, was in fact hurting her, and that's how he ended up with his bruises or altercations. There's nothing in the record that indicates that. Rather, what we have here is as the defendant has even conceded by the sergeant's own testimony, it was a ministerial document that this was happening every time a defendant was logged into jail to look for personal belongings and see whether there was any defined marks, bruises, or abrasions upon their body that would be identified. This is not a report that was meant for the anticipation of litigation. Rather, this is a report that was made for the sole purpose of a ministerial action to document the personal belongings and physical condition of the defendant, just like in Wilder v. Sims. And moreover, even if this court were to find that at least a portion of the records in the jail log entries, specifically those jail log entries that were made by Officer Smith because he was not there to testify, were not admissible under the hearsay exception of the business record exception, the verdict would still not be different because had those subsequent jail log entries not been admitted, we would still have the initial jail log entry and the testimony of Officer Headley, which gave the jury all the information that they had from the subsequent jail log entries, which was namely the defendant's physical condition. That was in the initial jail log entry. So there is no need, therefore, even if those subsequent jail log entries were, in fact, inadmissible, they did not give the jury any other information than they had already promptly had. Thus, the verdict would not have been different and amounts to harmless error. Simply put, Your Honors, in closing, the defendant had a right to cross-examine Officer Headley. It's pages 140 and 141 of the record show. It cannot be stated more simply than that. He had a Sixth Amendment right. He chose not to use it. Do you have any questions for me? I don't believe so. Thank you, Mr. King. Thank you very much, Justice Ginsburg. Do you have a rebuttal, Mr. Gleeson? Yes, ma'am. That remains that regardless of who authors the record, whether it's someone who purports to have first-hand knowledge or somebody else, if the record was prepared with an eye toward litigation, it generally does not qualify under the business records exception for admission to evidence. It bears repeating that if we look at the language of the entries and the context in which they were written, I think that Your Honors will agree that these records, these entries in the jail log, were plainly made with litigation in mind. Remember, she was in the jail being booked for aggravated battery and resisting a peace officer. The deputy was in another part of the jail being photographed, having a photo produced that would be used at her prosecution for aggravated battery and resisting a peace officer. I think all of the context and the language points to this being used, these entries being created with litigation in mind. Did Headley testify to the lack of marks on direct? Yes. And there was no cross? I don't believe so. Okay. Thank you. In her own testimony, Natasha Armstrong testified that she was talking to C.O. Smith. The C.O. did not testify. Armstrong testified she was talking to C.O. Smith during the processing of the jail. And C.O. Smith looked at her, but C.O. Smith did not have her turn around. So C.O. Smith could not possibly have seen these injuries that she had sustained, according to her at the hands of Deputy Graves. So I think cross-examination would have been helpful here with C.O. Smith. But as it is, she did not have the opportunity because C.O. Smith was not called as a witness. The state relied entirely on C.O. Smith's writings. I suggest that was wrong under the hearsay rules and under the confrontation clause. But where are we getting the evidence that she didn't turn around? Where does that come from? Who said she didn't turn around? Oh, I said that Natasha Armstrong testified. Oh, she testified she didn't turn around. Right. She testified that C.O. Smith did not have her turn around. Is that in the record? It may be, but I don't specifically recall. Oftentimes when something is not in the record, I don't feel 100% sure that it's really not there. Okay. We'll check it. All right. So again, I ask that you reverse the judgment, remand for a new trial without this particular grievous error. Thank you. Thank you. Thank you, Mr. Gleason. Thank you, Mr. Tang. We'll take the matter under advisement.